Good morning, Mr. Shachar. Are you able to hear me and to all three panel members? Yes, I can hear you and see all three of the judges. Thank you, Your Honor. Thank you. Our next case for argument is 22-1966, ACI Technologies v. United States. Mr. Shachar, please proceed. Good morning, Your Honors. May it please the Court. ACI was the incumbent contractor for the Navy's Electronic Manufacturing Center of Excellence since 1995. And this contract provided the overwhelming majority of ACI's work and was its primary source of revenue. And so the stakes were high for ACI to win the next contract when the Navy issued its RFP. But ACI never expected or asked for special treatment. Instead, all ACI expected was that the Navy would award the contract in accordance with the RFP terms. But the Navy failed to follow the RFP terms and arbitrarily awarded the contract. And there were at least three material errors. First, the source election authority repeatedly ignored the RFP's requirement that the winning contract holder have electronics manufacturing experience. And this error impacted the past performance evaluation, the evaluation of key personnel, and the best value analysis. For example, under past performance, Penn State had only one relevant past performance example. And the source election authority determined that that was rated very relevant and on that basis assigned Penn State a substantial confidence rating. But the RFP says that a very relevant past performance example must involve essentially the same scope and magnitude of effort as the RFP's requirements. But Penn State's only relevant past performance example involved a different scope of effort and a different magnitude. And this is not an invention of ACI. As we look at the record, you'll see that repeatedly this is something that the Navy's own technical evaluators recognized. The respective statement of work for the Penn State and the RFP examples make this clear in their differing descriptions of the technical work scope in Section 1.3. And the Navy's government cost estimate especially notes that these centers can't be compared to each other because they don't perform the same or similar work or accurate comparison. And this difference is why the Navy's technical evaluators highlighted Penn State's misunderstanding of the material differences between the technologies and Penn State's lack of experience in electronics manufacturing. Now, and again, this is not an ACI invention, it's not an argument of counsel, but I want to point you to the appendix. I can't read it to you because of the protective order, but the appendix pages 2450 at the bottom of the page, 2451 at the top of the page and the end of the first bullet, and 2458, the end of the last bullet, and I'll come back to those later. And on those pages, the evaluators addressed the need for electronic manufacturing experience and Penn State's specific weaknesses in those areas. Nonetheless, the SSA concluded that Penn State's past performance was the same identical, that was her quote, that it was the same identical as the RFP's statement of work. And on that basis, she said that there was no advantage between Penn State and ACI on past performance. And so the SSA's decision is contrary to the record, and it's contrary to what the Navy's own technical evaluators found, and I'll come back to that. But the SSA also disregarded the RFP's requirement for electronics manufacturing experience when she said in her best value decision that Penn State had quote, strong technical personnel. Now, technical personnel were to be evaluated by the technical evaluators, and the Navy's technical evaluators gave Penn State a rating of only acceptable for key personnel and staffing due to their lack of experience with electronics manufacturing. And again, it's the same pages that I pointed to before in the appendix, 2450. Counsel, what's the standard of review that we review, for example, the determination related to past performance under? Well, in terms of reviewing the lower court, I think it's a de novo standard of review. In terms of reviewing what the Navy did, there is deference. There are many cases in this court and other courts that say you owe a great deal of deference to the Navy evaluators. But the question is, who is that deference owed to? Is it owed to the source election authority, or is it owed to the Navy evaluators and the record as a whole? And I think under the Supreme Court State Farm case and under this court's Alabama case on the standard of review, when it comes to arbitrary interpretations, the question is, did the source election authority fail to address a significant issue, or did she reach a conclusion contrary to the record? And according to federal claims, and GAO has repeatedly addressed this problem, that an SSA can't overrule lower-level evaluators, that's fine. But under the APA standard, they have to explain why they're doing that, and that's what she didn't do here. And that happened in past performance, it happened in staffing, and it happened in cost realism. In all three areas, the record shows that the Navy evaluators were extremely concerned about Penn State's lack of experience in electronics manufacturing. And it's not the case that the SSA said, I see that the technical evaluators said that, but I disagree, and here's why. Maybe that would have passed muster, but that's nowhere in the record. And they've never made that, even in post hoc statements, they haven't made that argument. No one said that these Navy technical evaluators didn't know what they were talking about or that they made a mistake. And that's what we're relying on. So if there's any question of deference, deference should be to those evaluators. And the SSA can't overrule them unless she states why she's doing that. I would turn to the case, Information Sciences Court, at the Court of Federal Claims, 70, I'm sorry, 73, Fed Claims, 70, pages 120 to 121, where they discuss that issue, that the SSA can't overrule lower level evaluators without explaining why. And with regard to the Source Election Authority's conclusion... Can I, I have a question for you. Did you tease out this issue because you're drawing a line now between the SSA and the technical evaluators. Did you parse that out in your brief? Because I feel like I may have overlooked that and didn't appreciate it. Yeah, yeah, it is in our brief. It's where we cite this Information Sciences case, and it's in the best value section where we talk about that issue. Perhaps we should have led with that in our introduction to our brief, but it's certainly in there, in our briefing. Where, can you direct me to where in the brief it is, just so I can know and double check and re-read that part? Yes, Your Honor. I think it's on page 34 of our initial brief, and I'm referring to the pages at the bottom of the page, not the ECF pages. And then on page 24 of our reply brief, looking at the pages. And we say there, an SSA can hold the rule of technical evaluators, but the court will hold such action only where it is rationally explained. And then we said the SSA provided no reasonable basis for accrediting PSU with strong technical personnel, given the actual weaknesses identified by the Navy evaluation team. Okay, so you raised this issue with regard to the argument about strong technical personnel, but did you raise it with regard to all of these other things? I mean, it seems like now you're sweeping in this notion that the SSA came up short with regard to a number of the different determinations she made, not just this one determination. Yes, we do cite the information sciences case, but in the past performance section of our brief, we talked about how the Navy evaluators had these concerns about their lack of experience with electronic manufacturing. And we cite it to the same pages that I'm calling to your attention now. And those pages, especially 2450 and 2451, really explain in the evaluators' own words why there's this difference between electronics manufacturing and other technical domains. And it's really focusing on what does manufacturing mean in this context and why it's important that the people and the offeror have experience in those areas. So, yes, we did talk about that. And it's in our reply brief on page five. Maybe other places, too, where we cite those pages. Can I just ask a follow-up on that? This is essentially not a contrary to evidence, but a insufficient addressing of evidence point. Did you make the, that is the SSA, insufficiently addressed evidence that was important, namely the evidence of its own evaluators indicating that there was this difference? Did you make that point in the Court of Federal Claims? Yes, yes, we did. We repeatedly argued about the significance of the Navy evaluators' determinations on past performance, on cost, and on this technical staffing issue. And if I could just highlight, I mean, really under the cost, we did address below and in our briefs under the cost realism analysis that, again, the source election authority, who also did the cost realism analysis, it was a very odd term in which the contracting officer was also the source election authority and she was the cost analysis, but she was not a technical evaluator. And she disregarded what the technical evaluators said. They said, and this is on page 2451, they said that Penn State's lack of electronics manufacturing experience, quote, would create risk that would require additional cost and corresponding delay scheduled to the government to mitigate. And, again, there's some technical evaluators saying that this would create risk. It's not a question of maybe it would. The government cites some GAO cases that say, well, if the evaluators are not I'm sure it might possibly create risk. It doesn't have to be included in a cost realism analysis. But here the evaluators were crystal clear. They said it would create additional cost. And those costs... Can I ask a follow-up question? Back on page, you said, what page in the reply brief did you say that you made this argument, again, the one that the SSA didn't provide a reasonable basis for disregarding the Navy evaluation? You said page 34 in the blue brief and you said something about the reply brief and I must have misunderstood. And we cite the information sciences case there. But on page 5 you talk about how the evaluation was unreasonable because it was inconsistent with what the technical evaluators said. Which is really, it's the same species of argument that the source election authority ignored what was in the underline or didn't explain why she wasn't credited with what the evaluators said. So it's really the same issue. I'm on page 5. Where was this? Maybe I'm missing it. On page 5, can you tell me the language that does that? Yeah, we said that it's confirming the Navy's unreasonable equivalence between the EOSOW and EMSOW that the Navy technical evaluators found PSU lacking EM efficiency under factors 1 and 2. That's what we did in 2451. And we had the same we addressed the same issue in the initial brief too and I'll find you that. Yeah, okay. Yeah, if you look on page 22 of our initial brief I just don't see that I don't see this argument really being made on page 5. I see that you point to the technical evaluators but I don't see the argument that the SSA failed to articulate a basis for ignoring the Navy's technical evaluator language. You just seem to claim that she's wrong in light of the technical evaluators but okay. Page 22? And what was what would you like me to see here? Yes, starting at the top to show the differences between the two between the two manufacturing and optics we get inside to page 2450 and we say that we're relying on the evaluators. The evaluators identified PSU's misunderstanding of the material differences and it confirms that the SSA's determination was wrong. Okay. And we continue to argue that on page 223 that the SSA's equivalence determination is inconsistent with the findings of the technical evaluators. Okay, you're almost exhausted all your time including your remodel time. Is there anything else you want to make before we move on to government? No, I think, Your Honor, I will preserve any time left for remodel. Thank you. Very good. Is it Major? Major. Mr. Major, please proceed. Thank you, Your Honor. I think I'll start off where the Court left off if it may please the Court. We're talking about page 22 of their brief which is their past performance argument and as best we understand how ACI is presenting this technical factor the argument would be that the source selection authority in doing the past performance analysis focused upon the project management rather than the technical aspects of Penn State University's performance. And quite simply this Court has generally provided that past performance analysis are a subjective determination. The contracting officer here is the contracting officer for both the electro-optical and the electronics manufacturing centers. They understand what sort of work requires and what sort of past performance is relevant. So in assessing the relevance of the examples of past performance the contracting officer focused and we acknowledge this in our briefs we acknowledge this below upon center operations project management and that is inherently a rational determination rather than focusing on the technical analysis. ACI has even acknowledged that the contracting officer didn't ignore the technical and what you are now saying there on the central argument that we just heard namely that the technical evaluators said there's a real problem here and the SSA in her decision did not say by the way the technical evaluators say there's a real problem here's why I think A there's not a real problem and I'm not providing considerations and it just isn't there. That's what I took away. The source selection authority didn't ignore it we have a broad source selection decision which they talk about where in the SSA's decision is there an addressing of the somewhat negative evaluators evaluation. Are we talking in the past performance analysis the cost price analysis because I'm not quite you got to let me finish my apologies I am happy to have citations for all of the above and I would say that the answer varies depending upon which area I'm focused on for example if I'm talking about past performance I'd say that the source selection authority is not addressing the technical aspects those are generally considered as part of sort of the agency's broader sort of technical analysis here with we acknowledge below with regards to past performance the source selection authority is focusing on determining scope magnitude of effort and complexities based upon the statement of work and acknowledges contrary to what counsel for ACI represented between the solicitations or acknowledges the difference between the various statements of work and that's appendix 1950 you can find a very direct addressing of that counsel said that the SSA simply said the same identical in that regard and I'm happy to address that and put that in context but I think that's getting us further away with regards to the sort of cost price estimate if you look at appendix 1992 generally the agency isn't ignoring the fact that PSU didn't didn't have hadn't done electro manufacturing before instead they are looking for opticals in the technical analysis I think you probably focus on pages 2457 of the appendix pages 2599 of the appendix that's the parts where the source selection authority is acknowledging advantages and disadvantages provided with regards to personnel the SSA here went through just so I understand is 2450-1 and 2457-8 is that the SSA? yes that is 2450 and 2451 is the SSA's decision source selection decision you can find the source selection there's only so much material because we don't have a front page I should know this but in the table of authorities the pages for 245 that we were just talking about says excerpt final proposal consensus report is that the source selection authorities? sorry that's what the agency is looking at 2457 to 2506 of the record and there if you're looking over the technical considerations again you'll find that at 2578 through generally 2585 the table of authorities makes that clear who produced this final proposal consensus report document for March 4th 2021 by I don't know who in the agency ultimately prepared it but it's a consensus report but it's not the source selection authority my apologies if that had been the source selection authority then it would have been self evident that the SSA was considering these points but it's not her document no but that is replicated if you look in the source selection decision where when talking about the actual technical factors I apologize I was trying to get to that but ultimately they acknowledge those differences what again we view ACI's argument as being is that the difficulty is that the source selection authority didn't import those technical concerns onto their past performance analysis again they don't have to it's a question of determination and inherently reasonable for them to focus on what they view as the most important parts of past performance on this factor with regards to cost price the source selection authority did acknowledge and the cost decisions and I think there's a little blending with regards to cost price the actual evaluator also did some of the initial past performance information they also were involved in cost price so the contracting officer is very involved in this procurement and that particular cost realism evaluation is determining whether the costs that were provided by an offeror are realistic for the work to be provided they haven't priced things out too low and I think it's so fundamental that you all understand it that at least it would have benefited me do I understand the following right the numbers here are all estimates the reason for concern about cost is that for example if Penn State was going to incur significantly higher startup costs it would be passing those on to the Navy yes that's a concern and that you know when Penn State didn't start a cost to start up a new center and that would have ultimately impacted the cost because this is a cost plus fixed price contract but the cost component is a concern to the government because costs can be passed on to the government so the government will perform a cost realism analysis to determine whether the costs of this contract that is going to hurt us down the road yes and that's a sort of concern but I mean here you had the cost price analysis looking at direct labor rates fringe labor overhead costs other direct costs it focused on the task orders as required by the solicitation so the agency did an adequate cost realism analysis here to reasonably conclude that the cost proposal was realistic and reasonable for the work to be performed it talked about the access of resources that Penn State University had it talks about them being able to leverage resources from their work in electro-opticals and expressly conclude unless there are further questions or concerns for these reasons and the reasons set forth in our brief we respectfully request that this court affirm the decision of the United States Court of Federal Appointments thank you very much your honors thank you your honors just a few quick points the government counsel said that Penn State has access to resources and that's not the issue is not Penn State's access to resources it has to do with the lack of electronics manufacturing experience by its personnel and the cost and delays to the government and that's the point that point is made in the technical evaluators documentation but it's not addressed in the cost realism analysis the court below complained that we didn't cite to the cost realism analysis and the pages of this concern they said it's going to cost extra because Penn State doesn't have experience in this area and this is how we the evaluators dealt with that issue and again that's not what's in the record and that's the problem that's why it's an arbitrary evaluation I think the rest of our points I think we've made in our briefing in the areas that we talked about past performance, cost realism and technical personnel she had the documentation we're not disputing that she knew about these issues what we're saying is there's no explanation for why she didn't credit what the Navy evaluators were saying and that was her obligation